IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI WISOR,

        Plaintiff,                                    06cv0497

      v.                                        **ELECTRONICALLY FILED**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

<u>**MEMORANDUM OPINION**</u>

**November 14, 2006**

    **I. Introduction.**

    Plaintiff Lori Wisor brings this action pursuant to 42 U.S.C. § 405(g) of the Social

Security Act ("Act"), seeking review of the final determination of the Commissioner of Social

Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

benefits under title XVI of the Act.  Consistent with the customary practice in the Western

District of Pennsylvania, the parties have submitted cross motions for summary judgment and the

record developed at the administrative proceedings.

    After careful consideration of the Administrative Law Judge's ("ALJ's") Decision, the

memoranda of the parties, and the entire record, the Court finds the ALJ's decision is inadequate

to permit meaningful review, and will therefore remand the matter to the Commissioner for

additional proceedings.

    **II.**      **Procedural History/ Statement of the Case.**

    Plaintiff filed for SSI benefits on July 23, 2004, alleging that she was completely disabled

because of surgery to her right knee, inter alia. After her claim was initially denied, she requested

a hearing before an Administrative Law Judge (ALJ), which was held on October 13, 2005

before ALJ William W. Berg. Ms. Wisor was represented by counsel and testified in her own

behalf, as did a vocational expert (VE).

By decision of December 13, 2005, the ALJ denied plaintiff's claim, and the Appeals

Council declined to review the decision, thus making it the deemed final decision of the

Commissioner.  Thereafter, plaintiff timely commenced this action, and the matter is now before

this Court on the cross motions for summary judgment under Rule 56 of the Federal Rules of

Civil Procedure.

The ALJ found that plaintiff, who had no significant work history, suffered from a

number of non-severe impairments (which thereafter were disregarded), and the following severe

combination of impairments: status post right knee surgery, lumbar sprain with radiation to the

left leg, fibromyalgia, left sacroiliac joint dysfunction, bilateral carpal tunnel syndrome, and pain

associated with "psychological factors and general medical condition." Decision, Finding No. 2,

R. 16.  In combination, the ALJ found that plaintiff retained the residual functional capacity

(RFC) to perform sedentary work but that her severe impairments reduced her ability to work to

less than the full range of sedentary work, and he consulted a VE to determine whether there

were jobs available to her given her RFC and the restrictions he found on her ability to perform

the full range of sedentary work.

In making his RFC assessment, the ALJ reviewed and discussed some of the medical

evidence, primarily that of treating orthopedic surgeon, David Bizousky, M.D., who in a series of

written statements, opined that plaintiff was disabled from July 15, 2003 and that the disability

was expected to last through October 15, 2004, and another (unnamed) treating source who in

February 2005, opined that plaintiff was disabled from June 2004 to May 1, 2005.  Decision,

Finding No. 4, R. 19-20.  Nevertheless, the ALJ rejected the opinions that plaintiff was totally disabled for more than 12 months, because Dr. Bizousky's opinion was not "supported by the multiple negative or minimally positive test results noted below or by the claimant's statements that she can lift and carry 15 pounds . . . ."  R. 19.

The ALJ also found plaintiff's subjective complaints about her pain to be exaggerated and not fully credible, stating the "multiple negative objective testing, her duplicate treatment from multiple sources, and her insurance company's refusal to fill a prescription due to filling of four similar pain relief prescriptions strongly suggest the presence of a symptom magnification.  As such, her complaints of severe pain and limitations are not fully credible."  Decision, Finding No. 4 at R. 21.

The " multiple negative or minimally positive test results noted below" consists of some discussion of plaintiff's post surgery treatment at Indiana Hospital and Latrobe Hospital, which records contained some signs of improvement from time to time, but the ALJ's penultimate synthesis and analysis/ discussion of the medical evidence is as follows:

> As for the opinion evidence, great weight was given to reports from treating sources (Exhibits 1F, 2F, 3F, 5F, 6F, 7F, 9F, 10F, 11F, 12F, 14F, 15F, 16F, 18F, 19F, 20F, 22F, 23F, 24F, and 25F).  The exceptions are the reports indicating that the claimant is disabled (Exhibits 8F and 21F). Medium weight was given to reports from examining sources (Exhibits 26F and 27F).  Although the report from the State Agency was given weight as a report from an acceptable medical source, it was given reduced weight as it is from a non-examining non-treating source.

Decision, Finding No. 4, R. 21.

After hearing from the VE, the ALJ determined that plaintiff was capable of performing a restricted range of sedentary jobs that are available to her in the national and local economy, including small parts assembler, and wire worker, and therefore she was not disabled.  The Commissioner asserts that the ALJ's determination is supported by substantial evidence. Plaintiff

argues that the medical record contains "14 statements from treating physicians that plaintiff is unable to work," and that the ALJ's determination that she could work is inadequate and does not permit meaningful appellate review by this Court.  Related to that issue, plaintiff also takes issue with the hypothetical question posed to the VE which she claims failed to account for the medical opinions of record.

The Commissioner was granted leave of Court to file a reply brief which sets forth and discusses some of the opinions of several treating sources more specifically, offering same in support of the ALJ's determination.

The Court agrees with plaintiff that the ALJ short circuited his determination by his summary handling of the bulk of the medical evidence, including summarily rejecting numerous opinions of treating physicians, and that this expedient prevents this Court from performing any meaningful appellate review, thus requiring remand for further findings and proceedings.

**III.     Standards of Review**

Judicial review of  the Commissioner's final decisions on disability claims is provided by statute.  42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2].  Section 405(g) permits a district court to review

---

[1]  Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .

42 U.S.C. § 405(g).

[2]  Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

transcripts and records upon which a determination of the Commissioner is based.  Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a).  *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

<u>Substantial Evidence</u>

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive.  *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (*quoting Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a

---

42 U.S.C. § 1383(c)(3).

preponderance of the evidence but more than a mere scintilla."*Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutheford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is

6

some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995).  *See Sullivan*, 493 U.S. at 525.  The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are

7

other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).  *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment.  *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983);  *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell*, 461 U.S. at 461

(*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 *and Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to

VEs).[3]  *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." Rutherford, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); see also *id.* at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

Multiple Impairments

Where a claimant has multiple impairments which, individually, may not reach the level

---

[3]      Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in

11

combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65, *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent

evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999),

*relying on Dobrowolsky.* Where a medical impairment that could reasonably cause the alleged

symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom,

and the extent to which it affects the individual's ability to work.  This obviously requires the

ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the

extent to which he or she is disabled by it.   *See* 20 C.F.R. § 404.1529(c).  *Hartranft v. Apfel*, 181

F.3d 358, 362 (3d Cir. 1999).

      But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for

such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our

Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the

determination or decision rationale must contain a thorough discussion and analysis of the

objective medical and the other evidence, including the individual's complaints of pain or other

symptoms and the adjudicator's personal observations.   The rationale must include a resolution

of any inconsistencies in the evidence as a whole and set forth a logical explanation of the

individual's ability to work." *Schaudeck*, 181 F.3d at 433.

      Subjective complaints of pain need not be "fully confirmed" by objective medical

evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at

1195.  That is, while "there must be objective medical evidence of some condition that could

reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d

at  1070-71 (emphasis added), *quoted in Mason,* 994 F.2d at 1067.  Where a claimant's testimony

as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ

may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765

F.2d 31, 37 (3d Cir. 1985);  *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present *evidence to refute the claim.  See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ."

14

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must

weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence

for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional

citations omitted). The ALJ must consider all medical findings that support a treating physician's

assessment that a claimant is disabled, and can only reject a treating physician's opinion on the

basis of contradictory, medical evidence, not on the ALJ's own credibility judgments,

speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

> Moreover, the Commissioner/ ALJ
>
>> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43

(although ALJ may weigh conflicting medical and other evidence, he must give some indication

of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed

to mention significant contradictory evidence or findings, Court was left to wonder whether he

considered and rejected them, or failed to consider them at all, giving Court "little choice but to

remand for a comprehensive analysis of the evidence consistent with the requirements of the

applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a

residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the

evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of

such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion  cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

 The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to

16

"controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters reserved

for the Commissioner are not entitled to "any special significance," although they always must be

considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling

("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to

Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and

XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail

the distinction between medical opinions entitled to controlling weight and those reserved to the

Commissioner.

      SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled

to controlling weight does not mean that the opinion is rejected. It may still be entitled to

---

[4]      Subsection (d) states: "How we weigh medical opinions. Regardless of its source,
we will evaluate every medical opinion we receive. Unless we give a treating source's opinion
controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in
deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection
(d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these
> sources are likely to be the medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained from the objective
> medical findings alone or from reports of individual  examinations, such as
> consultative examinations or brief hospitalizations. If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your impairment(s) is
> well-supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial evidence in your case
> record, *we will give it controlling weight*. When we do not give the treating source's
> opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and
> (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6)
> of this section in determining the weight to give the opinion. *We will always give
> good reasons in our notice of determination or decision for the weight we give your
> treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical

opinion is not entitled to controlling weight or special significance because it is on an issue

reserved for the Commissioner,[5] these Social Security Rulings require that, because an

adjudicator is required to evaluate *all* evidence in the record that may bear on the determination

or decision of disability, "adjudicators must *always* carefully consider medical source opinions

about any issue, including opinions about those issues that are reserved to the Commissioner,"

and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis

added). Moreover, because the treating source's opinion and other evidence is "important, if the

evidence does not support a treating source's opinion on any issue reserved to the Commissioner

and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator

must make 'every reasonable effort' to recontact the source for clarification of the reasons for the

opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not

"well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is

"inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527

(d)(2). *See* note 4, *supra.* Where an opinion by a medical source is not entitled to controlling

weight, the following factors are to be considered: the examining relationship, the treatment

relationship (its length, frequency of examination, and its nature and extent), supportability by

clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20

---

[5]       SSR 96-5p lists several examples of such issues, including whether an
individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's
RFC is and whether that RFC prevents him or her from returning to past relevant work, and
whether an individual is "disabled" under the Act.

C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

**IV.    Discussion**.

There is no question that plaintiff was disabled for at least a substantial period of time as a result of her knee surgery: the question is, for how long? If plaintiff's disability was expected to last less than 12 months, she is not considered disabled. If, however, her disability extended or was expected to extend beyond the 12 months, she would qualify.

Although the Court has not counted all 14 various opinions of disability that plaintiff suggests are in the medical record, it has counted enough of them to see that there are at least

several such opinions of disability, from various treating sources and for various lengths of time, and that these opinions overlap sufficiently to extend well beyond the 12 months requisite.

The ALJ acknowledges and discusses only one such opinion specifically, one of Dr. Bizousky's, but his summary rejection of the others and his conclusory reasoning about the "multiple negative objective testing" makes it difficult, if not impossible, for this Court to perform its obligation to review the determination for substantial evidence.  Merely stating that "great weight was given to reports from treating sources," listing 20 Exhibits by number designations, with "exceptions [being] the reports indicating that the claimant is disabled, listing two Exhibits, and "[m]edium weight was given to reports from examining sources," listing two Exhibits, does not provide to this Court a sufficient record with which to make the appropriate review.

In reviewing the record for substantial evidence, the district court must not weigh the evidence nor substitute its own conclusions for those of the fact finder, *Rutherford*, 399 F.3d at 552, and cannot rectify errors, omissions or gaps in the ALJ's discussion of the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ.  *Fargnoli,* 247 F.3d at 44 n.7 (district court "The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.* . . . that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'").

Thus, the Court cannot accept the Commissioner's invitation in her reply brief to fill in

the omissions and gaps in the ALJ's determination by examining and evaluating the opinions of the various treating sources in the first instance.  That task is for the ALJ to perform on remand.

For the foregoing reasons, the Court will grant plaintiff's motion for summary judgment, deny the Commissioner's motion for summary judgment and remand to the Commissioner for further findings and proceedings. An appropriate order will be entered.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All counsel of ECF record